to make certain repairs; and the court (at page 550) said: "The lease is an instrument apparently perfect in itself, and purports to contain the agreement of each party. There are no ambiguities in the terms of the lease, requiring explanations to make it intelligible. In such a case it cannot be shown that there was a promise of either party different from, or in addition to, those contained in the executed contract." To the same effect are Mayer v. Moller, 1 Hilt. 491; Howard v. Thomas, 12 Ohio St. 201. In Post v. Vetter, 2 E. D. Smith, 248, the same principle is reiterated, with the qualification that such a promise made during the term, founded on a new consideration, may be proved. The cases relied upon by the defendant are distinguishable either by the fact that they refer to agreements not required to be in writing or to a different state of facts. In Chapin v. Dobson, 78 N. Y. 74, the plaintiff was allowed to prove a warranty on a sale as collateral to the principal contract. In Clenighan v. Mc-Farland (Com. Pl.) 11 N. Y. Supp. 719, the oral agreement was to put premises in repair before the commencement of the term, and as a condition precedent to the operation of the lease. So in Mann v. Nunn, 43 Law J. C. P. 241, the agreement was to put an unfinished house in a state fit for habitation before the commencement of the term. In the Clenighan Case the court recognizes the distinction by holding that, if the agreement had been to make repairs during the term, proof of the oral agreement would have been inadmissible; and so in the other cases the promise held to be collateral was to do acts antecedent to the operation of the demise. When the statute requires the terms of a contract to be in writing, neither party will be permitted to show that it was other or different from what is expressed. Routledge v. Worthington Co., 119 N. Y. 592, 23 N. E. 1111. It is a task to reconcile the cases, and get at their distinguishing features, for the question of what constitutes a collateral undertaking is necessarily close, and requires the greatest care in enforcing one rule that another equally important to the administration of justice may not be impaired. If the answer had alleged that the repairs were to be made antecedent to the term, and that their performance had been postponed at the request of the landlord until after it had commenced, there might have been force in the defendant's contention that the promise was collateral to the lease.

For these reasons, the oral evidence was properly excluded, and the plaintiffs are entitled to judgment for $1,194.48.

---

### KENT et al. v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. April 24, 1896.)

1. ELEVATED RAILROADS—DAMAGES TO ABUTTING PROPERTY—RATIO OF RENTAL TO FEE DAMAGE.

In an action against an elevated railroad for damages to abutting property, an allowance of rental damages amounting to 20 per cent. per annum on fee damage awarded is excessive.

2. SAME—TIME FOR WHICH RENTAL DAMAGES ALLOWED.

Where an award in condemnation proceedings was confirmed July 5th, but not paid until November 17th, the owner of the premises is entitled

to recover rental damages for the time between the date of the award and the date of payment; there being nothing to show that the award was docketed at the time as a final judgment.

Appeal from special term, New York county.

Action by Julia A. Kent, individually and as trustee under the will of Ellen Kent, and others, against the Manhattan Railway Company, to recover damages to abutting property. There was judgment in favor of plaintiffs, and defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

J. C. Bushby, for appellant.
H. G. Atwater, for respondents.

VAN BRUNT, P. J. This action was commenced for an injunction and damages by an abutting owner. Upon the consent of both parties, an interlocutory judgment was entered on the 31st of October, 1893, enjoining the defendant from further maintaining its railway in front of plaintiffs' premises, unless, within a time limited therein, it acquired title to the easements appurtenant to said premises. It was further ordered and adjudged by said decree that the question as to the amount of damages theretofore occasioned to the rental value of said premises should be reserved until the further order of the court. Pursuant to said decree, the defendant commenced condemnation proceedings, in which commissioners were duly appointed, and the report of such commissioners awarding the plaintiff $750 as fee damages was confirmed on the 5th of July, 1894. This award was paid on the 17th of November, 1894. The issues in this action concerning the rental damages were subsequently tried on the 21st of March, 1895; and the court awarded rental damages at the rate of $150 a year from the 14th of February, 1885, six years before the commencement of the action, to November 17, 1894, the date at which the defendant paid the award to the plaintiff, amounting in all to the sum of $1,462.52. An additional allowance of 5 per cent. computed upon that amount was also given. Evidence was offered upon the part of the plaintiff to sustain the issue as to rental damages. It seems to us, upon an examination of this evidence, that the award made was excessive. It appears by the judgment in the condemnation proceedings that the fee damage sustained amounted to $750, and this adjudication in that proceeding, being between the same parties, and affecting the same subject-matter, is conclusive; and an award of 20 per cent. rental damage upon a fee damage of $750 is upon its face excessive, and there is no evidence in the case justifying such a high rate of rental damage in view of such a low rate of fee damage.

It is urged upon the part of the plaintiff that the award in question is not conclusive between the parties. It seems to us that that question cannot be again litigated between these same parties, and that, as there is an undoubted relation between fee damage and rental damage, a rental damage of 20 per cent. upon the fee damage is manifestly excessive. We think that the rental damage should be reduced to $75 a year, and the extra allowance modified accordingly.

In regard to the alleged error committed in allowing rental damage from the 5th of July, 1894, to the 17th of November, 1894, it seems to be sufficient to say that the objection might have been well taken had it appeared that the award had been docketed as a final judgment; but it does not appear that any judgment had been entered, and consequently the condemnation proceedings were not entirely completed.

During the progress of the trial, objection was taken to the evidence offered in reference to the rent of the premises No. 309 Pearl street, which the witness under examination stated was a store and four-story building, used as an hotel. The ground of the objection was that the property was dissimilar from the premises in suit. The court overruled the objection, and the defendant's counsel duly excepted. It might be, had the court, upon this appeal, come to a different conclusion in regard to the effect of the award in the condemnation proceedings, that the receipt of such evidence would have called for a reversal of the judgment, as it might well be that its introduction affected the decision of the court in regard to rental damages; but, in view of the conclusion at which we have arrived as to the effect of such award, the evidence in question seems to be entirely immaterial, and does not call for a reversal.

The judgment should be modified as above indicated, and, as modified, affirmed, without costs. All concur.